**F. B. BLANSETT and Ethel Blansett, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 16475.**

United States Court of Appeals Eighth Circuit.

Nov. 3, 1960.

Rehearing Denied Dec. 12, 1960.

476

William H. Becker and E. Massey Watson, Columbia, Mo., for appellants.

Harry Marselli, Attorney, Tax Division, Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Meyer Rothwacks and Michael I. Smith, Attorneys, Tax Div., Dept. of Justice, Washington, D. C., and Edward L. Scheufler, U. S. Atty., Kansas City, Mo., Harry Marselli, Washington, D. C., on the brief, for appellee.

Before SANBORN, WOODROUGH, and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

Appellants, plaintiffs below, commenced this action for refund of income taxes paid for the calendar year 1948 in the amount of $9,258.14, plus interest. The court denied relief and plaintiffs appealed.

The facts as stipulated by the parties were adopted by the trial court and are incorporated in a memorandum opinion. D.C., 181 F.Supp. 637. Reference to the opinion will disclose that while the facts are not unusually involved, they are quite detailed, and no useful purpose can possibly be served by another full restatement of them. The parties are familiar therewith, and others interested may ascertain the details by reference to the trial court's opinion.

In summary, the controversy · stems from action taken by the Commissioner of Internal Revenue with reference to the 1948 and 1949 income tax returns filed by plaintiffs. Their 1948 return showed a tax due of $3,114.50; their amended return for 1949 showed a net operating loss of $31,071.41. In 1950 an internal revenue agent inspected and audited the 1948 return and proposed a deficiency in plaintiffs' income tax for 1948 of $9,097.44. This deficiency was the subject of a Treasury Department Form 870 duly executed by plaintiffs in 1950 wherein they consented to the assessment of the deficiency without regard to restrictions imposed by § 272(a), Internal Revenue Code of 1939, 26 U.S.C.A. § 272 (a). This deficiency of $9,097.44 plus interest was assessed by the Commissioner in June, 1950. However, as the result of a tentative allowance of a carry-back adjustment based on the claimed 1949 net operating loss, the amount previously assessed for the year 1948 was abated in the sum of $7,488.32. See at page 639 of 181 F.Supp.

In 1952 plaintiffs' 1948 return was re-audited and their 1949 return was audited, with the result that all of the net operating loss claimed for the year 1949 and the aforesaid tentative allowance of the carry-back adjustment based thereon were eliminated and disallowed. This disallowance was made for the stated reason, "lack of substantiation." Thereupon the internal revenue agent proposed a deficiency in plaintiffs' tax for 1948 in the amount of $7,488.32, being the amount previously abated in 1950. Plaintiffs again executed a waiver on Form 870, but shortly thereafter sought to revoke this instrument. On October 24, 1952, the Commissioner made an assessment of the deficiency for 1948, relying upon the waiver.[1]

---

1. It appears that on October 18th and 23rd, 1952, notice of revocation was given to the regional office in St. Louis, and on the latter date the local agent wrote to Washington, advising of the revocation and protest. The following day, October 24th, the challenged assessment was made in Washington, apparently without actual notice of the revocation.

Conferences and considerable correspondence failed to convince the Commissioner that plaintiffs had effectively revoked the waiver, and in February, 1953, federal tax liens were filed in the office of Recorder of Deeds of certain counties in Missouri. Following this event plaintiffs instituted a suit in the United States District Court for the Eastern District of Missouri to enjoin collection of the deficiency assessment. A preliminary injunction was granted, and defendants in that action appealed to this Court. Thereafter plaintiffs paid the amount of the assessment with interest, without prejudice to their right to claim a refund, and the action for injunction was dismissed. This action followed.

The trial court ruled that plaintiffs had effectively revoked the waiver on October 18, 1952, so that no legal deficiency assessment could be made in reliance thereon after that date.[2] Having so determined, the court then demonstrated that the action of the Commissioner could be sustained under authority granted by §§ 3780(b) and (c), 26 U.S. C.A. §§ 3780(b, c), and 272(f),[3] Internal Revenue Code of 1939, and that even though the challenged action was procedurally incorrect, the plaintiffs could not recover the amount paid without proving that said sum represents payment in excess of their true tax liability for the year 1948.

In summary, the principal points urged by plaintiffs are: (1) the challenged assessment is void because it was made under § 272(a) without giving plaintiffs the required 90 days' notice; (2) the challenged assessment cannot be sustained by reliance on §§ 3780(c) and 272 (f) of the Code because the Commissioner, proceeding under § 272(a), did not purport to act under these sections; (3) the challenged assessment cannot be sustained under §§ 3780(c) and 272(f) because the Commissioner did not give notice that the assessment had been made or would be made pursuant thereto. On the other hand, the Commissioner, in upholding the challenged assessment, asserts that a deficiency assessment may be sustained upon any legal ground supporting it, even though not relied upon at the time of the assessing; that if the assessment is right on any theory, the Commissioner must be sustained.

Aside from the question of the validity of the procedure in making the assessment, the Commissioner further contends that in a suit for refund the ultimate question is whether the taxpayer actually overpaid his taxes and that since plaintiffs failed to prove that they overpaid their taxes for 1948, they cannot recover. Plaintiffs insist that they have at all times contested the validity of the tax arising from the disallowance of the 1949 loss.

We first take up the question of the validity of the assessment. The controversy revolves around the aforementioned sections of the Code. Section 272(a) provides that if the Commissioner determines that there is a deficiency in respect of the tax of any taxpayer, he is authorized to send notice thereof by registered mail. Within 90 days after such notice is mailed the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. No assessment of a deficiency may be made until such notice has been mailed to the taxpayer nor until the elapse of the 90-day period. Subsection (d) of § 272 grants a taxpayer the right to waive the restrictions provided for in subsection (a).[4] Section 272(f) provides, inter alia,

---

2. Commissioner disagrees with the court's finding that the plaintiffs' waiver had been revoked prior to the deficiency assessment on October 24, 1952. We do not make determination of that issue, but for the purpose of this opinion proceed on the basis that the trial court's finding in this respect is correct.

3. Unless otherwise indicated, all statutory references are to the 1939 Internal Revenue Code.

4. Form 870 executed by plaintiffs in 1950 following proposal of deficiency in the 1948 tax, and again in 1952 following disallowance of tentative carry-back adjustment, was premised on § 272(d).

that if the taxpayer is notified that on account of a mathematical error appearing upon the face of the return, an amount of tax in excess of that shown upon the return is due, and that an assessment has been or will be made on the basis of the correct amount, such notice shall not be considered as a notice of deficiency and the taxpayer shall have no right to file a petition with the Tax Court based on such notice. The provisions of § 3780 relate to and deal with tentative carry-back adjustments. Of pertinence here is § 3780(c) which authorizes the Commissioner to assess the amount of a tentative carry-back adjustment determined to be excessive, "as a deficiency as if it were due to a mathematical error appearing on the face of the return, as provided in Section 272(f)."

There is little room to doubt that in 1952 when the Commissioner obtained plaintiffs' waiver of the restrictions provided in § 272(a), he was pursuing the course prescribed for making an assessment for a deficiency contemplated by § 272(a). The trouble stems from the revocation by plaintiffs of this waiver, and the failure of the Commissioner to give the 90 days' notice prior to the time the assessment was made on October 24, 1952. If plaintiffs were correct in asserting that the Commissioner's challenged action is governed by § 272(a), and that the deficiency assessment must stand or fall on that section, we would then be required to determine whether technical irregularities in procedure under the circumstances here, were fatal to the validity of the assessment.[5] In our view, such determination is unneces-

sary because of other overriding considerations.

■ The pivotal issue is whether, in light of what transpired, the Commissioner is bound by the theory which he pursued at the time of making the deficiency assessment, or whether his action permissibly may be upheld on another theory. Resolution of this issue brings into play principles of law which have been applied with considerable frequency in tax litigation. First, a deficiency assessment may be sustained upon any legal ground supporting it, even though the Commissioner did not rely thereon when the assessment was made. If the assessment is right on any theory it must be sustained. Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224; Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037; Bernstein v. C. I. R., 5 Cir., 267 F.2d 879, 881; and Acer Realty Co. v. Commissioner of Internal Revenue, 8 Cir., 132 F.2d 512, at pages 514, 515, where this Court applied the rule, stating:

"In an appeal to the Board the burden is upon the taxpayer 'to show that it was entitled to the deduction which the Commissioner had disallowed, and that the additional tax was to that extent illegally assessed.' Reinecke v. Spalding, 280 U.S. 227, 233, 50 S.Ct. 96, 98, 74 L.Ed. 385. The taxpayer must show that the assessment is wrong upon any proper theory. Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224. Upon appeal the Board 'may investigate anew the issues between the government and the taxpayer,

5. See and compare, United States v. Yellow Cab Co., 7 Cir., 90 F.2d 699, 701; Ventura Consolidated Oil Fields v. Rogan, 9 Cir., 86 F.2d 149, certiorari denied 300 U.S. 672, 57 S.Ct. 610, 81 L.Ed. 878; Steiner v. Nelson, 7 Cir., 259 F.2d 853; D'Andrea v. C. I. R., 105 U.S.App.D.C. 67, 263 F.2d 904; Gregory v. United States, 57 F.Supp. 962, 975, 102 Ct.Cl. 642, certiorari denied 326 U.S. 747, 66 S.Ct. 26, 90 L.Ed. 447; Lyddon & Company v. United States, 158 F.Supp. 951, 955, 141 Ct.Cl. 545, certiorari denied

358 U.S. 832, 79 S.Ct. 55, 3 L.Ed.2d 70; General Outdoor Advertising Co. v. United States, Ct.Cl., 169 F.Supp. 947, certiorari denied 362 U.S. 927, 80 S.Ct. 749, 4 L.Ed.2d 745; Pennsylvania-Dixie Cement Corp. v. United States, Ct.Cl., 17 F.Supp. 196; Champ Spring Co. v. United States, 8 Cir., 47 F.2d 1, certiorari denied 283 U.S. 852, 51 S.Ct. 560, 75 L.Ed. 1459; Commissioner of Internal Revenue v. Stewart, 6 Cir., 186 F.2d 239; Lehigh Portland Cement Co. v. United States, Ct.Cl., 30 F.Supp. 217, 233.

and upon the determination of the appeal it may affirm, set aside, or modify the findings and decision of the Commissioner.' Blair v. Oesterlein Co., 275 U.S. 220, 227, 48 S.Ct. 87, 89, 72 L.Ed. 249. Neither the Board nor this court is bound by the reason assigned by the Commissioner for his decision. If the disallowance is right it must be affirmed by the application of the correct rule of law. (Citing cases)."

■ Second, as a general proposition, a taxpayer seeking to recover the amount paid in satisfaction of a challenged assessment must prove that the amount sought represents an overpayment of his tax liability for the tax year in question. A procedural or administrative error does not *per se* entitle a taxpayer to a refund. Lewis v. Reynolds, 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293; Stone v. White, 301 U.S. 532, 534, 57 S.Ct. 851, 81 L.Ed. 1265; Champ Spring Co. v. United States, 8 Cir., 47 F.2d 1, certiorari denied 283 U.S. 852, 51 S.Ct. 560, 75 L.Ed. 1459, and compare, United States v. Yellow Cab Co., 7 Cir., 90 F.2d 699; Lyddon & Company v. United States, 158 F.Supp. 951, 954, 141 Ct.Cl. 545, certiorari denied 358 U.S. 832, 79 S.Ct. 55, 3 L.Ed.2d 70.

Shorn of all technicalities, and simply stated, the disallowance of the carry-back or credit had the effect, for all practical purposes, of restoring plaintiffs' tax liability for the year 1948 to precisely what it was before they applied for and received allowance of the tentative carry-back. The June, 1950, initial determination of the tax deficiency for the year 1948, in the amount of $9,097.44 is not vulnerable to a successful attack, and none has been made thereon, inasmuch as plaintiffs had waived the § 272(a) restrictions at the time of that determination. Obviously, plaintiffs' real complaint is directed to the disallowance of the 1949 losses, and in turning to the language of § 3780(c), it is apparent that, under the circumstances existing at the time of the challenged assessment, the Commissioner was entitled to proceed under that section for purposes of adjusting over-credits attributable to carry-back losses. It appears that plaintiffs conceded that such valid assessment could then have been made "pursuant to and in accordance with Sections 3780(c) and 272(f)," and, either before or after such assessment, the Commissioner could have notified the taxpayers "that he had or would make such assessment pursuant to those sections." See at pages 644, 645 of 181 F.Supp.

■ Realistically, while termed an "assessment of deficiency," the action of the Commissioner on October 24, 1952, was not actually the assessment of an additional tax as ordinarily contemplated within the ambit of § 272(a), requiring the 90-day notice unless waived. This distinction was recognized by the Court in United States v. Curd, 5 Cir., 257 F. 2d 347, certiorari denied 358 U.S. 920, 79 S.Ct. 290, 3 L.Ed.2d 239, which involved the revival of a tax liability which previously had been provisionally forgiven. That Court stated, 257 F.2d at page 350:

"But without in any way intimating anything which would have a bearing on the ultimate decision on the merits of this controversy, this 1952 assessment was not a 'deficiency' within Section 272(a), 273(a, b). Deficiency, as it is used in the statute, Section 271, 1939 Code, 26 U.S.C. § 271, relates to the assertion of a claim for an *additional* tax as a part of the mechanism by which the Board of Tax Appeals, now the Tax Court, acquires jurisdiction, and thus affords taxpayers an alternative remedy to payment and suit for refund. (Citing cases)."

See also, Standard Oil Company (N. J.) v. McMahon, 2 Cir., 244 F.2d 11, 13; D. C., 139 F.Supp. 690, 700, and Hastings & Co. v. Smith, 3 Cir., 224 F.2d 875, ruling that *interest* on a deficiency is not a "deficiency" within the meaning of § 272(a), and that assessment of same did not require the 90-day notice.

The cases of Repetti v. Jamison, D.C. Cal., 131 F.Supp. 626, affirmed, Jamison

v. Repetti, 9 Cir., 239 F.2d 901, [involving an attempted assessment under § 272(f)], and Maxwell v. Campbell, 5 Cir., 205 F.2d 461, [involving a fraudulently claimed credit], are strongly relied on by plaintiffs. However, those cases are readily distinguishable in that here the Commissioner was expressly authorized to proceed under § 272(f) by reason of § 3780(c). The recent decision of the 5th Circuit in Enochs v. Muse, 270 F.2d 528, affirming D.C., 164 F.Supp. 561, which ruled that addition of statutory penalties does not involve computation of mathematical errors, is likewise distinguishable.

■■ We next turn to the question of the sufficiency of the notice received by plaintiffs in light of the requirements of § 3780 and § 272(f). Concededly, the notice given plaintiffs did not explicitly state that the disallowance of the carryback was being treated as if it were due to a mathematical error. Nevertheless, we are of the opinion that the notice under date of September 25, 1952, comports with the requirements of the statute, and we are in full accord with the conclusion reached by the trial court: D.C., 181 F.Supp. 646:

> "What more information and notice the Commissioner could have given plaintiffs regarding the instant deficiency assessment, regardless of the form of notice, to make this deficiency more legally assessed, is not demonstrated by plaintiffs or known by the Court."

The argument of the plaintiffs in urging that the Commissioner was required to specifically designate the section upon which the assessment was predicated in order to advise the taxpayers as to whether they could petition the Tax Court for redetermination, or whether they would be required to pay and then sue for refund, fails in persuasion in the light of our previous discussion, inasmuch as we have demonstrated that the Commissioner was authorized to proceed under § 272(f) and taxpayers at no time had the right to petition the Tax Court. Thus, failure to specifically advise taxpayers of the § 3780 and § 272(f) procedure could in no way prejudice them. Congress by enacting § 3780(c) has determined that their rights would be adequately protected by means of a suit for refund for the purpose of challenging the Commissioner's actions as to carry-back adjustments.[6]

■ We therefore hold that the assessment of October 24, 1952, may be sustained under the authority of § 3780 (c) and § 272(f), and that plaintiffs are not entitled to a refund by reason of any technical or procedural irregularity therein.

■■ We next turn to the question of the merits of plaintiffs' claim for refund. Although we are satisfied from the record that throughout this long controversy plaintiffs have consistently questioned the propriety of the action of the Commissioner with respect to the merits of their tax liability for 1948, they chose not to litigate this issue in this proceeding, apparently being content to rest their claim on the technical ground which we have ruled is without substance. Absent proof by fair preponderance of the evidence that no part of the tax refund claimed is due the Government, under the existing circumstances, plaintiffs are not entitled to recover herein.

> " ' * * * (T)he ultimate question presented for decision, upon a claim for refund, is whether the taxpayer has overpaid his tax. This involves a redetermination of the entire tax liability. While no

6. The trial court incorrectly ruled that a taxpayer has the right to bring an injunction action to restrain the Commissioner's elimination of the tentative carry-back adjustment "(such as plaintiffs did regarding the instant assessment, but later dismissed)" at page 646 of 181 F.Supp. We find no statutory authority for enjoining the action of the Commissioner in disallowing a tentative carry-back. Statutes dealing with right of injunction are §§ 3653(a), 26 U.S.C.A. § 3653(a) and 272(a).

new assessment can be made, after the bar of the statute (of limitations) has fallen, the taxpayer, nevertheless, is not entitled to a refund unless he has overpaid his tax. The action to recover on a claim for refund is in the nature of an action for money had and received and it is incumbent upon the claimant to show that the United States has money which belongs to him.'" Lewis v. Reynolds, supra, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293.

We would probably be fully warranted in affirming the judgment of the trial court without further proceedings, but inasmuch as plaintiffs assert with much emphasis in their brief that they "have at all times disputed the merits of the asserted deficiency which was the subject of the challenged assessment, even though such merits are not in issue in this action" and inasmuch as the record supports this contention, we have concluded that they should be given the opportunity to demonstrate their good faith in this respect.

We are partially motivated in reaching this conclusion by the fact that the Commissioner apparently made certain further adjustments in 1956 with respect to plaintiffs' claim for refund filed as a condition precedent to bringing this suit. The record is not complete in this regard but it appears that the Commissioner ultimately *allowed* a 1949 operating loss in the amount of $12,682.37, but, concurrently, increased plaintiffs' capital gains income for the year 1948, thereby cancelling out any possible benefit to be derived from a carry-back of this loss. The effect of these later adjustments was not discussed by the trial court with respect to plaintiffs' right to a refund, apparently because of plaintiffs' reliance upon the legal insufficiency of the assessment.

While the judgment is correct on the elementary issue presented and litigated in the trial court, that is, that plaintiffs are not entitled to a refund upon the sole ground of procedural irregularity in making the assessment of October 24, 1952, in the interest of justice the case should be remanded for further proceedings consistent with our views expressed herein.[7]

It is so ordered.

---

7. Hormel v. Helvering, 312 U.S. 552, 558, 559, 61 S.Ct. 719, 85 L.Ed. 1037.